UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LINDA SUE G.,

Plaintiff,

v.

CASE NO. 1:25-cv-00385 (JGW)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

J. Gregory Wehrman, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, (Docs. 7, 9), as well as Plaintiff's reply brief, (Doc. 10). Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 7) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 9) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I. RELEVANT BACKGROUND

### A. Procedural Background

On July 21, 2022, Plaintiff protectively filed a Title II application for a period of disability and insurance benefits, alleging an onset date of January 1, 2020. (Tr. 60, 151-57.) Plaintiff's claim was denied initially and on reconsideration. (Tr. 74, 82.) She then

timely requested a hearing before an Administrative Law Judge (ALJ) and appeared with counsel for a telephonic hearing before ALJ Paul Georger on March 15, 2024. (Tr. 33-58.) On April 30, 2024, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. (Tr. 14-32). The Appeals Council denied her request for review, (Tr. 1-6), and Plaintiff timely filed her appeal to this Court.

**B. Factual Background**[1]

Plaintiff was born on March 24, 1959 and obtained a high school education. (Tr. 40-41.) Her disabling conditions were alleged to include neuropathy, diabetes, and knee pain. (Tr. 60.) On reconsideration, Plaintiff identified several additional conditions, including depression, anxiety, and difficulty concentrating. (Tr. 75.)

When asked at the hearing if she had any "physical or mental chronic problems" that prevented her from working, Plaintiff responded "[p]hysically, my knees, my back. I don't know if you could say it was mental. Like, I just – yes." (Tr. 43-44.) Plaintiff described the pain she experienced in both her knees and low back as constant and exacerbated by sitting or standing too long, as well as walking too much. (Tr. 44.) She also testified to pain she experienced as a result of neuropathy. (Tr. 48.) She indicated that nothing relieved the pain and denied taking any pain medication, even over-the-counter medication, although she later testified that she took gabapentin for pain. (Tr. 44, 45.) She rated her pain at an "8." (Tr. 44.) She acknowledged receiving regular cortisone shots for her knees, but she explained that her doctors had not yet discussed surgery, although it appeared inevitable for her knees. (Tr. 44-45.) Plaintiff also described the physical limitations resulting from her impairments and the associated pain. (Tr. 48-50.)

[1] This recitation of facts primarily includes testimony from the hearing before the ALJ. Other facts will be developed throughout the opinion as relevant to the Court's analysis.

She also discussed her diabetes, treatment, and functional limitations. (Tr. 51-52.)

She confirmed being able to engage in personal care tasks, although she limited some of those activities due to pain walking upstairs (to take a shower for example). (Tr. 46.) She confirmed participating in household chores, such as washing dishes, cooking, and doing the laundry. (Tr. 47.)

When asked if there were any other problems "that would affect [her] ability to work," Plaintiff responded "I don't know. I feel like I'm in a fog all the time, so. I'm anxious all the time. I don't know." (Tr. 52.) When asked if she had talked to her doctors about that, she responded "I think I've mentioned it." (*Id.*) Plaintiff did not otherwise testify to any mental impairments or resulting limitations.

### C. Mental Impairment Opinion Evidence[2]

In September 2022, agency reviewer Dr. Dekeon reviewed Plaintiff's file initially and concluded that Plaintiff had no limitation in three paragraph B categories, and a mild limitation in the adapt or manage oneself category. (Tr. 65.) He recognized that Plaintiff reported no psychiatric hospitalizations and no outpatient mental health counseling. (Tr. 66.) Additionally, there were no mental health diagnoses from primary care physician notes dated May 2021-June 2022. (*See id.*) Based on his review of the file, he concluded that Plaintiff's mental impairments "[did] not more than minimally affect her daily functioning" and therefore found them to be non-severe. (*See id.*)

On reconsideration, Dr. Blackwell found no mental impairment had been established. (Tr. 77.)

[2] Because Plaintiff limited her challenge to the ALJ's mental RFC, she has waived any challenge to the physical RFC, and the Court will limit its recitation of the medical opinion evidence to those opinions pertinent to her alleged mental impairments.

Also in September 2022, consultative examiner Dr. Janine Ippolito evaluated Plaintiff. (Tr. 693-97.) Dr. Ippolito acknowledged that Plaintiff denied previous hospitalizations and also reported no previous or current outpatient treatment. (Tr. 694.) Dr. Ippolito acknowledged Plaintiff's depressive symptoms to include Plaintiff's reports of feeling numb and being bothered by no longer working. (*See id.*) She noted having difficulty adjusting to life after the pandemic and crying easily if watching animals suffer on TV. (*See id.*) Dr. Ippolito also acknowledged Plaintiff's anxiety-related symptoms, including getting anxious and tense whenever she had upcoming appointments that cause her to leave home. (Tr. 695.) Plaintiff's objective mental evaluation was unremarkable. (Tr. 695-96.) Dr. Ippolito issued a medical source statement:

> [Plaintiff] presents as able to understand, remember and apply simple and complex directions and instructions, use reason and judgment to make work related decisions, interact adequately with supervisors, co-workers and the public, sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, maintain personal hygiene and appropriate attire and demonstrate awareness of normal hazards and take appropriate precautions with no evidence of limitations. She has mild limitations in her ability to regulate emotions, control behavior, and maintain well-being. These limitations are due to her emotional distress.

(Tr. 696.)

Dr. Ippolito separately noted that "[t]he results of the present evaluation appear to be consistent with psychiatric problems, but in itself, this does not appear to be significant enough to interfere with [Plaintiff's] ability to function on a daily basis." (*Id.*)

**D. ALJ's Decision**

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025. (Tr. 19.)

2. The claimant has not engaged in substantial gainful activity (SGA) since January 1, 2020, the alleged onset date (AOD) (20 CFR 404.1571 *et seq*.). (Tr. 19.)

3. The claimant has the following severe impairments: obesity, osteoarthritis bilateral knees, diabetes with diabetic polyneuropathy and degenerative disc disease of the lumbar spine (20 CFR 404.1520(c)). (Tr. 19.)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Tr. 20.)

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (RFC) to perform no more than light work as defined in 20 CFR 404.1567(b) except postural limitations: the claimant can never climb ramps and stairs, never climb ladders, ropes, or scaffolds, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, crawl occasionally. (Tr. 22.)

6. The claimant is capable of performing past relevant work (PRW) as a: (1) Sales Representative, Food Service and (2) Sales Service Supervisor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565). (Tr. 26.)

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2020, through the date of this decision (20 CFR 404.1520(f)). (Tr. 27.)

## II. LEGAL STANDARD

### A. Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501

(2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

**B. Standard to Determine Disability**

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational

requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

## III. ANALYSIS

Plaintiff argues remand is necessary because the ALJ failed to incorporate mental health limitations into the RFC, nor did he explain why he did not include mental limitations in the RFC despite finding persuasive medical opinions reflecting mild limitations in certain areas. (*See* Doc. 7-1 at 4-5.)

A claimant's RFC is the most she can still do despite her limitations and is based on all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). The regulations explicitly provide that the RFC is an administrative finding reserved to the Commissioner and not a medical finding. 20 C.F.R. § 404.1527(d); *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (recognizing that "the ALJ bears 'the final responsibility' for making RFC determinations"); *see also Desirae D. v. Comm'r of Soc. Sec.*, 20-cv-00054-JGW, 2021 WL 2042576, at *3 (W.D.N.Y. May 21, 2021). As such, the RFC conclusion "need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo*, 31 F.4th at 78. Indeed, an ALJ is permitted to "weigh all

of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

This naturally requires the ALJ to reconcile conflicting medical evidence in the record. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). It is well-settled that, when formulating an RFC, an ALJ is permitted to accept or reject portions of medical opinions to the extent they are inconsistent with the record. *See April W. v. Comm'r of Soc. Sec.,* No. 1:24-cv-00044-MAV, 2024 WL 4804778, at *5 (W.D.N.Y. Nov. 14, 2024) (recognizing that an ALJ "is free to reject portions of medical-opinion evidence not supported by objective evidence") (quoting *Demeca P. v. Comm'r of Soc. Sec.,* No 1:22-cv-0504, 2024 WL 4505265, at *4 (W.D.N.Y. Oct. 16, 2024)).

The ALJ concluded that Plaintiff's adjustment disorder with anxiety and depression were nonsevere impairments. (*See* Tr. 20) (finding that Plaintiff's mental impairments "considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.") The ALJ then analyzed the paragraph B criteria, finding Plaintiff had no limitations in three categories and a mild limitation in Plaintiff's ability to adapt or manage herself. (*See id.*) The ALJ then noted that "[b]ecause the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere." (*See id.*)

Having carefully reviewed the evidence, the Court finds ALJ Georger's analysis of Plaintiff's mental impairments to be supported by substantial evidence. Importantly, Plaintiff was not receiving, nor had she ever received, any type of mental health treatment.

She denied any previous hospitalizations or outpatient treatment for mental health issues. (*See* Tr. 694.) The record does not contain a diagnosis for any mental health conditions by a treating physician. Indeed, the only mental status evaluation in the record appeared to be conducted by consultative examiner Dr. Ippolito, and it reflected unremarkable findings. (Tr. 695-96.) Thus, the record contained no evidence that Plaintiff experienced any functional limitation from her mental health conditions. *See* 20 C.F.R. § 404.1520(c) (noting that an impairment must be "severe," which means it significantly limits an individual's ability to perform basic work activities). And no medical opinion concluded that Plaintiff's mental impairments impact her ability to function, nor set forth specific functional abilities limited by Plaintiff's mental conditions.

For this same reason, the ALJ's decision not to include any restrictions pertaining to Plaintiff's mental impairments was proper. The ALJ found three of the four relevant functional areas to be without limitation, eliminating any requirement for additional discussion at step four. *See Annette A. v. Comm'r of Soc. Sec.*, Case no. 23-cv-6087-FPG, 2024 WL 2956906, at *3 (June 12, 2024) (citing *Wells v. Colvin*, 727 F.3d 1061, 1065 n.3 (10th Cir. 2013)) (noting that a finding of "none" in a functional area "obviate[s] the need for further analysis at step four," since the impairment necessarily "pose[s] no restriction on the claimant's work activities").

And the ALJ found that Plaintiff was only mildly limited in the fourth functional area, and a mild limitation in only one functional category at step two "does not necessarily imply a corresponding limitation in a claimant's RFC." *See Janine T. v. Comm'r of Soc. Sec.*, No. 23-cv-384, 2024 WL 1678128, at *3 (W.D.N.Y. Apr. 18, 2024) (rejecting the theory that "because the ALJ found, at step two, that Plaintiff was mildly limited in her

abilities to interact with others and concentrate and maintain pace, the ALJ was required to include some limitation related to her depression in the RFC.") *See also Kendra C. v. Comm'r of Soc. Sec.*, No. 21-CV-1131MWP, 2024 WL 1242413, at *10 (W.D.N.Y. Mar. 22, 2024) (recognizing that "if a mental impairment causes only mild limitations that do not result in any functional work-related restrictions, the ALJ does not necessarily err by formulating an RFC without mental limitations or restrictions"); *Grace M. v. Comm'r of Soc. Sec.*, No. 20-CV-1023SR, 2022 WL 912946, at *3 (W.D.N.Y. Mar. 29, 2022) (noting that "even though mild limitations may cause functional restrictions, such limitations do not compel the inclusion of mental limitations in the RFC").

And as noted above, the record does not contain, nor does Plaintiff identify, specific functional abilities limited by Plaintiff's mental impairments. Although Plaintiff contends that the ALJ failed to consider these non-severe mental impairments in his RFC, the above analysis suggests otherwise,[3] and it is well-settled that an ALJ's failure to identify every piece of evidence does not mean it was not considered in his analysis. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). Moreover, the burden to show the necessity of a more restrictive RFC is on Plaintiff, and Plaintiff has not carried her burden. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (recognizing that the plaintiff has the burden to prove a more restrictive RFC).

[3] As discussed throughout this section, the Court is able to glean the ALJ's rationale in evaluating Plaintiff's mental impairments and their relation to the resulting RFC. While Plaintiff takes issue with the clarity of his analysis, the Court finds it sufficient. *See Cynthia M. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00955-CJS, 2024 WL 4289537, at *8 (W.D.N.Y. Sept. 25, 2024) (concluding that "the ALJ's failure to expressly discuss Plaintiff's mild mental impairments in the RFC discussion does not require remand, since the ALJ's reasons for not including additional limitations in the RFC finding are apparent from the decision as a whole, and, in particular, from his discussion at step three of the sequential evaluation.") (citing *Donna L. v. Comm'r of Soc. Sec.*, 5:23-CV-0655 (GTS/TWD), 2024 WL 3738067 (N.D.N.Y. Aug. 9, 2024)).

Plaintiff seems to argue that she was entitled to a disabled finding based on her interpretation of the grids and the application of her education, prior work experience, and questionable ability to do skilled work. (*See* Doc. 7-1 at 9.) Although not well-developed, as the Court understands this argument, it must fail. Here, when posing a hypothetical to the vocational expert (VE), the ALJ asked the VE whether Plaintiff could perform her past work in light of the limitations ultimately set forth in the RFC. (*See* Tr. 54.) The VE responded "[a]s they are, she could perform all of the jobs." (*See id.*) Thus, the VE testified that, based on her age, education, and ability, Plaintiff could perform her past jobs even with the restrictions set forth in the RFC. (*See id.*) Plaintiff's counsel did not challenge this conclusion or contend that her age required the application of the grids, and again, reliance on VE testimony was necessary given that the ALJ was considering an RFC of less than the full range of light work. *See Melisa G. v. Berryhill*, No. 3:18-CV-508 (DJS), 2019 WL 2502726, at *4 (N.D.N.Y. June 17, 2019) (citing *Zabala v. Astrue,* 595 F.3d 402, 410 (2d Cir. 2010)) (recognizing that the "testimony of vocational experts is utilized when a claimant is not able to perform all of the requirements for a particular exertional level, in order to determine whether there are jobs the claimant can perform with those additional limitations."). And, as Defendant points out, the ALJ clearly noted that he compared Plaintiff's RFC with the "physical and mental demands" of her past work, a finding which was supported by the VE's testimony. (*See* Tr. 27.)

## IV. CONCLUSION

Based on the foregoing, the Court finds no basis for remand. **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 7) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 9) is **GRANTED**.

The Clerk of Court is **DIRECTED** to close this case.

Dated: September 22, 2026
Rochester, New York

J. Gregory Wehrman
HON. J. Gregory Wehrman
United States Magistrate Judge